**Willie GLINSEY, Appellant,**

v.

**H. L. PARKER, Superintendent Shelby County Jail, Appellee.**

**Arthur FRANKLIN, Appellant,**

v.

**H. L. PARKER, Superintendent Shelby County Jail, Appellee.**

**Euan BAILEY, Appellant,**

v.

**H. L. PARKER, Superintendent Shelby County Jail, Appellee.**

**Nos. 73–1806 to 73–1808.**

United States Court of Appeals, Sixth Circuit.

Argued Dec. 4, 1973.

Decided Feb. 13, 1974.

Ural B. Adams, Jr. (Court-appointed), Memphis, Tenn., on brief, for appellants.

James H. Allen, Asst. Dist. Atty. Gen., Memphis, Tenn., on brief, for appellee; David M. Pack, Atty. Gen. of Tenn., Nashville, Tenn., of counsel.

Before PHILLIPS, Chief Judge and PECK and LIVELY, Circuit Judges.

LIVELY, Circuit Judge.

The petitioners, Glinsey, Franklin and Bailey, appeal the orders of the district court which denied them habeas corpus relief. All are serving penitentiary sentences imposed in state court proceedings in which they were found guilty by a jury of committing armed robbery. Following a two-day evidentiary hearing, the district court filed an opinion in which three constitutional issues that had been raised by petitioners were considered. In denying habeas corpus writs the district court found that the arrests, interrogation and state court proceedings which resulted in the petitioners' imprisonment did not violate their constitutional rights. In order to deal with the issues presented on appeal it is necessary to make a brief statement of the facts surrounding the arrest and trial of petitioners.

On the evening of December 8, 1969 the Memphis police picked up two young men named Hurd and Harris in connection with a holdup which had taken place earlier that evening. Hurd and Harris admitted their participation in the December 8 robbery and divulged to the police the fact that they had also been involved in approximately 13 other armed robberies which were unsolved at the time. In discussing the other rob-

beries, Hurd and Harris implicated all three of the petitioners and one Frederick Johnson. Beginning shortly after 3:00 a. m. on December 9, 1969, the police, led by Lieutenant Hadaway who was then a detective lieutenant in the robbery bureau, arrested each of the petitioners and Frederick Johnson. Each petitioner was arrested at his home in the presence of an adult and all were taken to police headquarters and then to juvenile court where their names, addresses, telephone numbers and family information were recorded. A juvenile court attendant notified the parents of each petitioner of the arrests, the charges and the fact that they were not eligible for release because of the seriousness of the charges. Each one was checked physically to determine if any beating or mistreatment had taken place. All three petitioners and Frederick Johnson were taken back to the police station and placed in a room with Hurd and Harris. Another youth who had been implicated by Hurd and Harris was released by the police when it was learned that he had only loaned a gun to Hurd and Harris and had not actually participated in any of the holdups.

By the time the petitioners were first brought to the police station, Hurd and Harris had already admitted the armed robbery of a liquor store on November 29, 1969 and had implicated all three petitioners and Frederick Johnson. The six suspects were questioned intermittently for approximately 12 hours beginning about 5:00 a. m. Since the three petitioners were 17 years of age, they were taken back to juvenile court for nearly two hours around the middle of the day on December 9 for preliminary disposition of their cases. Food was available to them during this period. The juvenile judge entered an order bringing them within the protective custody of the court but ordering detention pending a hearing which was set for December 15. Between 3:00 and 5:00 p. m. on December 9 all six suspects signed written confessions in the presence of each other in which they admitted tak-

ing part in the November 29 liquor store robbery. Before the petitioners and Johnson had made any statements they requested the police to leave them alone in the room with Hurd and Harris. This was done, and it was following a discussion among all six of the suspects that petitioners and Johnson agreed to give statements.

Many statements were taken by the police. At first the six suspects, while together, were asked about a number of separate robberies. An officer would describe the date and place of the robbery and ask which ones of the suspects had taken part in that robbery. Those who had taken part would raise their hands, and notes were taken by another officer recording the names of those who admitted participation in each of the crimes. After the group session was completed, the officers began taking statements from each individual suspect concerning specific robberies. These statements were written in long hand, signed by the suspects and were referred to by the police as "I" statements. Each of the petitioners made such a confession with respect to the November 29 liquor store robbery.

Following their return from juvenile court at about 2:00 p. m. on December 9, the petitioners and Johnson, Hurd and Harris were questioned in the presence of a stenographer who typed all the questions and answers. In the presence of each other all six suspects admitted certain robberies, including the one involving the liquor store on November 29, and typed statements were signed. These were referred to by the police as "We" statements. Each statement contained a *Miranda* type warning above the body of the confession.

On December 15, 1969 juvenile court ordered the petitioners remanded to the sheriff for disposition of the charges under the criminal laws of Tennessee on a finding of probable cause that they had committed the crimes charged. All were subsequently indicted for armed robbery in connection with the November 29 liquor store holdup and the court

**340**

ordered all six defendants to be tried together. Each defendant moved for a severance, but the motions were denied.

Prior to the trial, Hurd and Harris had agreed to plead guilty and the State offered to recommend a 25-year sentence if all six defendants would plead guilty. Armed robbery was a capital offense in Tennessee at that time. The petitioners and Johnson refused this proposition and entered not guilty pleas. After the jury had been impanelled, Hurd and Harris pled guilty in the presence of the jury and the other four defendants pled not guilty. Because the jury fixes punishment under Tennessee criminal practice, Hurd and Harris remained as defendants and their cases were submitted to the jury for the purpose of fixing punishment along with those of the other defendants. Before the end of the trial, Frederick Johnson changed his plea to guilty. All three petitioners took the stand and repudiated the confessions which they had made on December 9, 1969. Hurd, Harris and Johnson did not testify, but the "We" statements of all six defendants confessing the November 29 robbery and implicating the others were introduced at the trial. The jury was instructed both at the time the statements were introduced and in the final charge that admissions could not be considered as evidence against any defendant other than the one who had made the admission. The jury determined the guilt of the petitioners and fixed their punishment at the same time that it fixed the punishment of Hurd and Harris and Johnson.

After exhausting their state remedies the three petitioners brought this action, alleging that the confessions introduced at the trial were not freely and voluntarily given, but were the result of coercion; that they were denied their Sixth and Fourteenth Amendment rights to confront and cross-examine witnesses against them; and, that the denial of a severance and subsequent use of the "We" statements in the trial was a violation of due process under the Fourteenth Amendment.

In addition to conducting a hearing, the district judge had before him the entire record of proceedings in the state courts. The district court found that at the time of arrest and prior to interrogation the petitioners were clearly advised of their rights and that they never requested counsel nor were deprived of their right to counsel. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964). The court found that there were no threats or promises and that the confessions of the petitioners were freely and voluntarily given. It was pointed out in the court's memorandum that the petitioners had confessed to the November 29 liquor store robbery in the morning of December 9 and shortly thereafter had signed "I" statements. The "We" statements which were introduced at the trial of the petitioners, although taken near the end of twelve hours of interrogation, were consistent with the oral confessions and the "I" statements which were taken near the beginning of the period of interrogation. We are mindful of the extreme care which must be exercised in determining whether a confession given by a juvenile charged with a serious crime is voluntary or coerced. Haley v. Ohio, 332 U.S. 596, 68 S.Ct. 302, 92 L.Ed. 224 (1948); Gallegos v. Colorado, 370 U.S. 49, 82 S.Ct. 1209, 8 L.Ed.2d 325 (1962). We believe from examining this record that the experienced and able district judge did closely scrutinize the facts and circumstances surrounding these confessions and that his findings and conclusions that the admission into evidence against them of the petitioners' own confessions was not a violation of their federal constitutional rights are fully supported by the record. Waddy v. Heer, 383 F.2d 789, 793 (6th Cir. 1967), cert. denied, 392 U.S. 911, 88 S.Ct. 2069, 20 L.Ed.2d 1369 (1968).

The second issue in the case arises under the confrontation clause of the Sixth Amendment which provides in part as follows: "In all criminal prosecutions,

the accused shall enjoy the right . . . to be confronted with the witnesses against him . . .." In Pointer v. Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965), the Supreme Court held that the right to confront witnesses and cross-examine them is essential to a fair trial and is made applicable to the states by the Fourteenth Amendment. Petitioners maintain that the introduction of the "We" confessions of Hurd and Harris at the joint trial constituted a violation of their right of confrontation and cross-examination under the Supreme Court holding in Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). There the Supreme Court held that a statement of one defendant who does not testify and which implicates another defendant in the crime for which they are on trial may not be introduced in a joint trial since the right of confrontation and cross-examination is denied the co-defendant. The Court held that even clear instructions to disregard such a statement as evidence against the co-defendant, as were given in the present case, do not make it admissible. The Court reasoned that the jury was likely to believe the portions of the statement implicating Bruton and that thus substantial weight was added to the prosecution's case against him by the use of inadmissible evidence.

In Dutton v. Evans, 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970), the Supreme Court held that the confrontation clause does not preclude the use of all hearsay evidence in a criminal trial and upheld the admission of testimony which recounted a statement of an alleged co-conspirator. This testimony had been permitted in evidence under a state rule which allowed statements of co-conspirators to be introduced as evidence against other members of a conspiracy. The case is distinguishable from Bruton in that it involved a separate rather than a joint trial and the witness who related the alleged statement of the co-conspirator was cross-examined at length. In Campbell v. Unit-

ed States, 415 F.2d 356 (6th Cir. 1969), this court held that an out-of-court statement of a co-conspirator could be admitted in a joint trial because of a federal rule permitting such testimony to be received as evidence against other members of the conspiracy. This court held that the Bruton rule is limited to situations where the out-of-court statements are *inadmissible* hearsay and has no application to situations where the extrajudicial statement is admissible under the narrowly defined co-conspirator exception to the hearsay rule.

In considering this issue in the present case the district judge found that the "We" confessions of Hurd and Harris were actually admissible as to the petitioners because the six suspects each adopted the statements given by the others as the officers questioned them as a group. The district court thus reasoned that the state trial court could have received the "We" statements of Hurd and Harris as evidence against these petitioners the same as the statements which petitioners themselves had given because they were "adoptive statements." The petitioners were present when Hurd and Harris gave the statements which were introduced at the trial. Their adoption of such statements was inferred from the similarity between the statements of Hurd and Harris and their own statements and the failure of petitioners to object or specifically disavow the statements of Hurd and Harris at the time they were made.

This court has had occasion to deal with the issue of an adoptive statement in a recent case. In Miller v. Cardwell, 448 F.2d 186 (6th Cir. 1971), cert. denied, 405 U.S. 1033, 92 S.Ct. 1295, 31 L. Ed.2d 490 (1972), one Swiger made a statement in Miller's presence which was recorded on an electric device. Following the completion of Swiger's statement, Miller was asked by the officers whether the statement was true and he eventually ratified Swiger's statement and this was recorded as well. At Miller's trial the recording was played following correct instructions to the jury

**342**

to the effect that it should consider Swiger's statement as evidence against Miller only if the jury found that Miller had accepted Swiger's statement as his own. Following conviction, Miller sought a writ of habeas corpus asserting that he was denied his right to confront witnesses and cross-examine them by the admission of Swiger's out-of-court statement. We held that Miller's consitutional rights had not been violated since he adopted the statement of Swiger as his own and thus made it admissible against him.

█ The case before us now raises the issue of whether petitioners can be held to have adopted the statements of Hurd and Harris by reason of their silence upon hearing such statements given. Of course all were in custody when the statements were given and this court has long held that no derogatory inferences may be drawn from the silence of a person who is in custody and accused of crime. McCarthy v. United States, 25 F.2d 298 (6th Cir. 1928). One in custody has the right to remain silent and it would violate rights guaranteed by the Fifth Amendment to hold that such a person, by his silence, has acquiesced in a statement made by another in his presence which implicates him in a crime. See Miranda v. Arizona, supra, 384 U.S. 436 at 468, n. 37, 86 S.Ct. 1602, 16 L.Ed.2d 694. In reversing the conviction in the McCarthy case, the court noted that the defendants later took the stand and denied all connection with the crime as was done here. The holding of McCarthy v. United States, supra, was reaffirmed in a recent case where it was held that an admission by silence, made while the defendant on trial and the maker of an inculpatory statement were undergoing police interrogation and at the time when they were obviously accused of having committed an offense, may not be received in evidence. To permit the jury to treat silence of one accused and in custody as an admission of guilt would contravene that person's rights under the Fifth Amendment to remain silent. United States v. McKinney, 379

F.2d 259 (6th Cir. 1967). In United States v. Brinson, 411 F.2d 1057 (6th Cir. 1969), the decisions in McCarthy and McKinney were relied upon in holding that the use of the fact that a person accused of a crime remains silent against such person is an error of constitutional magnitude.

Hurd and Harris did not testify at the joint trial. Thus there was no opportunity for the petitioners' counsel to cross-examine Hurd and Harris concerning the contents of the statements. As the Supreme Court said in Pointer v. Texas, supra, ". . . a major reason underlying the constitutional confrontation rule is to give a defendant charged with crime an opportunity to cross-examine the witnesses against him." 380 U.S. 400 at 406–407, 85 S.Ct. 1065 at 1069, 13 L.Ed.2d 923. The petitioners cannot be held to have waived their right of confrontation and cross-examination by their silence in the police station when Hurd and Harris made statements which implicated them. The right to confrontation and cross-examination is meaningful only if it can be exercised in the presence of the jury which is charged with deciding the question of guilt or innocence. We therefore hold that the silence of petitioners in the face of incriminating statements of Hurd and Harris cannot constitutionally be held to be an adoption of such statements under the circumstances of this case.

█ On the basis of the finding that each of the defendants had adopted the statements of the others, the district court also held that it was not a violation of due process for the trial court to refuse to sever the Hurd and Harris cases from those of petitioners, stating, "If the guilty pleas of Hurd and Harris can be said to be an assertion of guilt as to petitioners such assertion of guilt was encompassed by the confessions of Hurd and Harris that could have, though they were not, admitted in evidence against petitioners." While we do not agree that the petitioners adopted the confessions of Hurd and Harris, this neverthe-

less is not dispositive of the issue of severance. The matter of severance is always addressed to the sound discretion of the trial judge and accordingly is only reviewable for abuse. United States v. Ethridge, 424 F.2d 951 (6th Cir. 1970), cert. denied, 400 U.S. 993, 91 S.Ct. 463, 27 L.Ed.2d 442 (1971). Though there appears to be little reason for joining guilty-pleading defendants with those pleading not guilty even under Tennessee practice where the jury must set the punishment of those pleading guilty, still we cannot say that this joinder standing alone was prejudicial to the petitioners. Compare Crampton v. Ohio, 402 U.S. 183, 208–222, 91 S.Ct. 1454, 28 L.Ed.2d 711 (1971). It is conceivable that such a joint trial could be conducted without the use of the Hurd and Harris confessions and, if so, it would not be an abuse of discretion to deny severance.

One other point needs to be considered in this case. The district court found that all of the "We" statements were in substance the same concerning the November 29 liquor store robbery. Since the petitioners' own statements were found to be admissible against them, if the statements of Hurd and Harris which were admitted were identical with those of the petitioners in every material detail, such statements might be considered merely cumulative evidence and their admission harmless error. In Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969), while holding that the rule of Bruton applies to state prosecutions, the Supreme Court refused to set aside a conviction where the other co-defendants were tried jointly with Harrington over his objection that there should be a severance. The confessions of each of the four defendants were introduced into evidence with limiting instructions and one of them took the stand and was cross-examined. The other two co-defendants did not testify. The Supreme Court affirmed the conviction of Harrington, holding that in view of the other evidence of guilt the introduction of statements of co-defendants was merely cumulative evidence and was harmless beyond a reasonable doubt.

At a joint murder trial where neither defendant took the stand, a police officer in Schneble v. Florida, 405 U.S. 427, 92 S.Ct. 1056, 31 L.Ed.2d 340 (1972), testified to certain admissions by each of the defendants implicating both of them in a murder. Both were convicted and the conviction of one defendant (Snell) was reversed by the Florida Supreme Court after remand from the United States Supreme Court. Nevertheless, the Supreme Court affirmed the conviction of the other defendant (Schneble) on the ground that any violation of the Bruton doctrine which had occurred at the trial was, as to him, harmless beyond a reasonable doubt. The admissions of Schneble were held to be voluntary and admissible against him, but he contended that the introduction of his co-defendant's out-of-court statement deprived him of a constitutional right. The Court held that there was independent evidence of guilt which was overwhelming and that the allegedly inadmissible statement of the co-defendant merely tended to corroborate details of the petitioner's own comprehensive confession. Holding that there was no rational hypothesis on which the jury could have found Schneble guilty without reliance on his own confession the Court stated "In some cases the properly admitted evidence of guilt is so overwhelming, and the prejudicial effect of the codefendant's admission is so insignificant by comparison, that it is clear beyond a reasonable doubt that the improper use of the admission was harmless error." 405 U.S. at 430, 92 S.Ct. at 1059.

■ We have examined the trial transcript of the state proceedings against the appellants. Aside from the statements which were introduced, there is no evidence linking Glinsey or Bailey with the November 29 robbery. Franklin was positively identified by an employee of the liquor store as one of the holdup men. The same witness identi-

fied Hurd, but was unable to identify either of the other participants, though the statements of all agreed that Hurd and the three appellants took part in the robbery inside the store while the other two remained in the car. We find the error in the introduction of the Hurd and Harris statements to be harmless beyond a reasonable doubt insofar as it affected the trial of Franklin. His own confession in conjunction with the positive identification by a victim of the robbery constituted overwhelming evidence of guilt. Schneble v. Florida, *supra*. We find no such overwhelming evidence of guilt outside of the improperly admitted statements with respect to Glinsey and Bailey.

The judgment of the district court is affirmed in No. 73–1807; it is vacated in Nos. 73–1806 and 73–1808 and these cases are remanded with directions to grant writs of habeas corpus to the petitioners Glinsey and Bailey unless the State of Tennessee shall grant them new trials within a reasonable time to be fixed by the district court.