such as Stanford, have a choice of lethal injection or electrocution. For a prisoner who refuses to choose his or her method of execution, the default method is lethal injection. *See id.* Stanford does not challenge the constitutionality of lethal injection.

Because Stanford is given the option of electrocution and lethal injection, we need not evaluate the constitutionality of electrocution. In *Stewart v. Legrand*, 526 U.S. 115 (1999), an Arizona inmate challenged lethal gas as a cruel and unusual form of execution. But under Arizona law, inmates could choose execution by lethal gas or lethal injection. *See id.* at 119. The Supreme Court held that the inmate waived his habeas claim that execution by lethal gas was unconstitutional because he had chosen to die by lethal gas. *See id.* The Court stated that "[b]y declaring his method of execution, picking lethal gas over the state's default form of execution--lethal injection– [the inmate] has waived any objection he might have to it." *Id.*

Applying that same analysis here, if Stanford chooses electrocution over lethal injection, the constitutionality of which he does not challenge, he will waive any objection to electrocution. Thus, we need not consider whether electrocution is cruel and unusual punishment because, for that issue to be relevant, Stanford would first have to waive it.

**AFFIRMED.**

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2001 FED App. 0334P (6th Cir.)
File Name: 01a0334p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

KEVIN STANFORD,
        *Petitioner-Appellant,*

            *v.*                                    No. 00-5094

PHIL PARKER, Warden,
Kentucky State Penitentiary,
        *Respondent-Appellee.*

Appeal from the United States District Court
for the Western District of Kentucky at Louisville.
No. 94-00453—Charles R. Simpson, III, Chief District Judge.

Argued: February 12, 2001

Decided and Filed: September 20, 2001

Before: BOGGS, SILER, and COLE, Circuit Judges.

_____

**COUNSEL**

**ARGUED:** J. Vincent Aprile, II, DEPARTMENT OF PUBLIC ADVOCACY, Frankfort, Kentucky, for Appellant. David A. Smith, OFFICE OF THE ATTORNEY GENERAL,

CRIMINAL APPELLATE DIVISION, Frankfort, Kentucky, for Appellee. **ON BRIEF:** J. Vincent Aprile, II, DEPARTMENT OF PUBLIC ADVOCACY, Frankfort, Kentucky, Stefanie M. McArdle, Bowling Green, Kentucky, for Appellant. David A. Smith, Ian G. Sonego, OFFICE OF THE ATTORNEY GENERAL, CRIMINAL APPELLATE DIVISION, Frankfort, Kentucky, for Appellee.

_____

## OPINION

_____

SILER, Circuit Judge. Petitioner Kevin Nigel Stanford was convicted in a Kentucky state court of capital murder, first degree robbery, first degree sodomy, and receipt of stolen property. He was sentenced to death. His conviction and sentence were upheld on direct appeal and through state post-conviction proceedings. Stanford then filed a petition for a writ of habeas corpus in the federal district court, which denied his petition. We affirm the district court's denial of Stanford's habeas petition.

### I. Background

In 1981, Baerbel Poore worked as an attendant at a Checker gasoline station in southwestern Jefferson County, Kentucky. Working alone one evening, she read the gas pumps in preparation for closing the station for the night. Stanford, then seventeen years old, lived in the vicinity of the Checker station and knew Poore. On January 7, 1981, he and David Buchanan decided to rob the station. Troy Johnson, their accomplice, agreed to drive the get-away car but refused to participate in the robbery.

As Poore finished reading the pumps, Stanford approached her with a gun and, together with Buchanan, forced Poore inside the station's convenience store. Once inside, Buchanan attempted to open the store's floor safes while Stanford took Poore to a restroom and raped her. Buchanan soon joined

inherent authority of state courts to exclude defense evidence when the prejudicial aspects of that evidence exceed its probative value. *See United States v. Scheffer*, 425 U.S. 303, 308-09 (1998). "'*Lockett* and its progeny stand only for the proposition that a State may not cut off in an absolute manner the presentation of mitigating evidence, either by statute or judicial instruction, or by limiting the inquiries to which it is relevant so severely that the evidence could never be part of the sentencing decision at all.'" *Johnson v. Texas*, 509 U.S. 350, 361 (1993) (quoting *McKoy v. North Carolina*, 494 U.S. 433, 456 (1990) (Kennedy, J., concurring)).

Jones's testimony was properly excluded by a state court applying its own laws of evidence. On direct appeal, the Kentucky Supreme Court held that Jones's proffered testimony was inadmissible due to his minimal and remote personal knowledge of Stanford, his lack of expert qualification, and the improper substance of his testimony. *See Stanford*, 434 S.W.2d at 789-90. Jones would have testified about the "death penalty" and not about Stanford's character, prior record, or the circumstances of Stanford's crimes. *See Kordenbrock v. Scroggy*, 919 F.2d 1091, 1101-02 (6th Cir. 1990) (en banc) (finding that the exclusion of similar mitigation testimony was both irrelevant and harmless beyond a reasonable doubt).

#### j) Electrocution

And finally, Stanford argues that electrocution as a method of carrying out a death sentence is unconstitutional pursuant to the Eighth Amendment because it violates evolving standards of decency. *See Trop v. Dulles*, 356 U.S. 86, 101-02 (1958). Specifically, he argues that electrocution violates the Eighth Amendment because it involves "the unnecessary and wanton infliction of pain." *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). We affirm the district court's conclusion that Stanford's electrocution claim fails.

Stanford's argument ignores the fact that he need not be electrocuted. Ky. Rev. Stat. Ann. § 431.220(b) provides that those persons sentenced to death prior to March 31, 1998,

Because Stanford failed to fully and fairly present his judicial recusal arguments to the state courts, we affirm the district court's holding that Stanford's recusal claims are procedurally barred.  Furthermore, Stanford has failed to demonstrate any cause and prejudice or manifest injustice to overcome procedural default.

### h)  Penalty Phase Ineffective Assistance of Counsel

Stanford also contends that his counsel's performance at the penalty phase of his trial constituted ineffective assistance of counsel.  He claims that his counsel did not investigate his IQ, possible brain dysfunction, sexual abuse victimization, or the extent of his drug and alcohol addictions.  The district court properly concluded, however, that this claim is not cognizable on habeas review.   Stanford's penalty phase ineffective assistance of counsel claim is also  procedurally defaulted because Stanford failed to raise the claim before the Kentucky Supreme Court.

### i)  Robert Jones Testimony

Stanford next contends that the trial court improperly excluded the testimony of Robert Jones, a former death row inmate, during the penalty phase of his trial.  The exclusion of Jones's testimony, he argues, improperly limited his constitutional right to present mitigating evidence. Jones was one of nine mitigation witnesses called by Stanford's attorneys during the penalty phase, but he was the only one not permitted to testify before the jury. Mitigation testimony from five witnesses was actually presented.

The district court did not err in holding that Jones's testimony was properly excluded. *Eddings v. Oklahoma*, 455 U.S. 104 (1982), and *Lockett v. Ohio*, 438 U.S. 586 (1978), require that juries be allowed to consider all relevant mitigating evidence with the limitation that "[n]othing. . . limits the traditional authority of a court to exclude, as irrelevant, evidence not bearing on the defendant's character, prior record, or the circumstances of his offense." *Lockett*, 438 U.S. at 604 n.12.  The Supreme Court has recognized the

Stanford in the restroom, where they continued to rape and sodomize Poore.

When Stanford left the station, he took Poore with him. Driving Poore's car, he drove her a short distance to an isolated area.  Buchanan and Johnson followed in Johnson's car. When the cars stopped,  Buchanan exited Johnson's car and approached Poore's.  He saw Stanford standing just outside the open driver's door and Poore smoking a cigarette in the back seat.  Suddenly, Stanford shot Poore in the face at point blank range.  He then shot her a second time in the head.

After he murdered Poore, Stanford returned to the gas station to steal cigarettes.  Total proceeds from the robbery of the Checker station included approximately 300 cartons of cigarettes, two gallons of gasoline, and a small amount of cash.

In August 1982, over their objections, Stanford and Buchanan were jointly tried before a jury in the courtroom of Jefferson Circuit Judge Charles M. Leibson.  The jury found Stanford guilty of the capital murder of Poore, first degree robbery, first degree sodomy, and receipt of stolen property valued in excess of $100.  Judge Leibson sentenced Stanford to death for his capital murder conviction and forty-five years imprisonment for robbery, sodomy, and receipt of stolen property. Co-defendant Buchanan could not receive the death penalty because he was prosecuted as death-ineligible. He was sentenced to life imprisonment for murder, and sixty-years imprisonment for rape, sodomy, and robbery.  Johnson was convicted in juvenile court for his role as the getaway driver.

Stanford's conviction was upheld on direct appeal and in post-conviction proceedings. In 1987, the Kentucky Supreme Court affirmed his capital conviction.  *See Stanford v. Commonwealth*, 734 S.W.2d 781 (Ky. 1987).  And, in 1989, his conviction became final when the U.S. Supreme Court affirmed his conviction and sentence.  *See Stanford v. Kentucky*, 492 U.S. 361 (1989).  After his direct appeal failed, Stanford filed a post-conviction motion to vacate pursuant to

Ky. R. Crim. P. 11.42. First, the Jefferson Circuit Court and, then, the Kentucky Supreme Court rejected his post-conviction motion and affirmed his capital sentence. *See Stanford v. Commonwealth*, 854 S.W.2d 742 (Ky. 1993). In 1994, the U.S. Supreme Court denied certiorari on Stanford's post-conviction claims. *See Stanford v. Kentucky*, 510 U.S. 1049 (1994).

Stanford's federal habeas litigation began when he filed his petition in the Western District of Kentucky in January 1996. That petition raised forty-two separate claims of error. In August 1999, the district court denied his habeas petition and granted a blanket certificate of probable cause ("CPC"). In January 2000, Stanford timely appealed the district court's denial and dismissal of his habeas petition to this court.

## II. Certificate of Appealability

After the district court's entry of judgment and issuance of a CPC, the Supreme Court considered how provisions contained in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. §§ 2241-2266, should be applied in habeas actions initiated prior to AEDPA's enactment but for which appeals were filed after AEDPA's enactment. *See Slack v. McDaniel*, 529 U.S. 473 (2000). The Court held:

> When a habeas corpus petitioner seeks to initiate an appeal of the dismissal of a habeas corpus petition after April 24, 1996 (the effective date of AEDPA), the right to appeal is governed by the certificate of appealability (COA) requirements now found at 28 U.S.C. § 2253(c). This is true whether the habeas corpus petition was filed in the district court before or after AEDPA's effective date.

*Id.* at 478. Applying *Slack*, this court has stated that "with respect to appeals initiated after the effective date of AEDPA in habeas proceedings commenced prior to that date, pre-AEDPA law governs the appellate court's review of the trial court's ruling while AEDPA's requirement of a certificate of

available under the Federal Rules of Civil Procedure if, and to the extent that, the judge in the exercise of his discretion and for good cause shown grants leave to do so, but not otherwise." The burden of demonstrating the materiality of information requested is on the moving party. *See Murphy v. Johnson*, 205 F.3d 809, 813-15 (5th Cir. 2000).

The district court applied the correct legal standard in light of the evidence and the state court proceedings. The discovery sought by Stanford would not resolve any factual disputes that could entitle him to relief, even if the facts were found in his favor. To the contrary, Stanford's requested discovery, when reviewed in light of the recently examined record, falls more in the category of a fishing expedition. We will not find that a district court erred by denying a fishing expedition masquerading as discovery.

### g) Post-Conviction Recusal Claims

Stanford also contends that the district court erred in concluding that his recusal claims were procedurally defaulted in state court. In his habeas petition, Stanford alleged that his trial judge, Judge Leibson, was constitutionally required to recuse himself from conducting Stanford's trial because, at the time of the trial, Judge Leibson was campaigning for election to the Kentucky Supreme Court. Additionally, Stanford alleged ineffective assistance of counsel claims arising from the failure of Judge Leibson to recuse himself.

We affirm the district court's conclusion that Stanford procedurally defaulted his recusal claims. Stanford did not raise any recusal claims in his post-conviction motion to the Kentucky Supreme Court. In his post-conviction brief submitted to the Kentucky Supreme Court, Stanford addressed the merits of only "eight points urged for reversal." *See Stanford*, 854 S.W.2d at 748. Therefore, the Kentucky Supreme Court's opinion only addressed the merits of the "eight points urged for reversal." *See id.* at 743. Thus, the district court correctly concluded that post-conviction claims not included in the "eight points urged for reversal" were procedurally barred.

### e)  Federal Evidentiary Hearing

Next, Stanford claims that the district court erred by denying him a federal evidentiary hearing in conjunction with his habeas petition.  He was never granted any post-conviction hearing by the Kentucky state courts.

Generally, a habeas petitioner is entitled to an evidentiary hearing in federal court if the petition "alleges sufficient grounds for release, relevant facts are in dispute, and the state courts did not hold a full and fair evidentiary hearing." *Wilson v. Kemna*, 12 F.3d 145, 146 (8th Cir. 1994) (citation and internal quotation omitted).  However, a petition may be summarily dismissed if the record clearly indicates that the petitioner's claims are either barred from review or without merit. *See id.*  Even in a death penalty case, "bald assertions and conclusory allegations do not provide sufficient ground to warrant requiring the state to respond to discovery or to require an evidentiary hearing." *Zettlemoyer v. Fulcomer*, 923 F.2d 284, 301 (3d Cir. 1991).

The district court did not err by denying Stanford's request for an evidentiary hearing.  Stanford never specified which of his forty-two habeas claims of error warranted an evidentiary hearing and never specified what could be discovered through an evidentiary hearing.  Furthermore, his claims were either barred from review or without merit.

### f)  Rule 6 Discovery Motion

Stanford further argues that the district court abused its discretion by denying discovery pursuant to Rule 6 of the Rules Governing 28 U.S.C. § 2254 cases.  The district court did not abuse its discretion by denying discovery.

Habeas petitioners have no right to automatic discovery.  A district court has discretion to grant discovery in a habeas case upon a fact specific showing of good cause under Rule 6. *See Bracy v. Gramley*, 520 U.S. 899 (1997); *Byrd v. Collins*, 209 F.3d 486, 515-16 (6th Cir. 2000).  Rule 6(a) provides:  "A party shall be entitled to invoke the processes of discovery

appealability governs the right to appeal." *Mackey v. Dutton*, 217 F.3d 399, 406-07 (6th Cir. 2000).

Under post-AEDPA § 2253(c), a COA may issue only upon "a substantial showing of the denial of a constitutional right."  Also, a COA must "indicate which specific issue or issues satisfy the showing required." *See* 28 U.S.C. § 2253(c).  Where appeals are initiated after AEDPA's effective date, but a district court granted a CPC rather than a COA, the reviewing court may consider an issue raised on appeal so long as that issue satisfies the statutory COA standards set forth in § 2253(c). *See Mackey*, 217 F.3d at 406-07.

Even though the district court originally issued a CPC, we need not undertake COA analysis of the issues raised by Stanford on appeal.  In January 2001, the district court reconciled *Slack* and its progeny with the procedural history of Stanford's habeas petition.  Because Stanford filed his habeas petition before AEDPA's effective date but filed his notice of appeal after AEDPA's effective date, the district court determined that a COA was required.  Therefore, it *sua sponte* issued a COA "for all issues raised by [Stanford] in the petition for writ of habeas corpus filed in the district court and presented to the United States Court of Appeals for the Sixth Circuit in the appeal currently pending before that Court."  Stanford appeals fourteen of his habeas claims and, since a COA issued for each claim, we review all fourteen.

### III.  Standard of Review

Because Stanford's habeas petition was filed in January 1996, prior to the effective date of AEDPA, we apply the pre-AEDPA version of 28 U.S.C. § 2254 when reviewing the district court's denial of his habeas petition. *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997).  Under pre-AEDPA analysis, "[w]e review a district court's denial of habeas corpus relief de novo, but we review any findings of fact made by the district court for clear error." *Combs v. Coyle*, 205 F.3d 269, 277 (6th Cir. 2000).  A state court's factual findings "are entitled to complete deference if supported by the evidence." *Id*.  Under this presumption of correctness, a

petitioner has the burden of "'establish[ing] by convincing evidence that the factual determination by the state court is erroneous.'" *Coe v. Bell*, 209 F.3d 815, 823 (6th Cir. 2000) (quoting *McQueen v. Scroggy*, 99 F.3d 1302, 1310 (6th Cir.1996)). This "presumption only applies to basic, primary facts, and not to mixed questions of law and fact" and "also applies to implicit findings of fact, logically deduced because of the trial court's ability to adjudge the witnesses' demeanor and credibility." *McQueen*, 99 F.3d at 1310.

Habeas review is not a broad exercise of supervisory power, but is limited to constitutional error. *See Eberhardt v. Bordenkircher*, 605 F.2d 275 (6th Cir. 1979). To be eligible for habeas relief on any given claim, a state prisoner first must fully and fairly present his claim, as a matter of federal law, to state courts. *See Picard v. Connor*, 404 U.S. 270, 275 (1971). Merely raising an issue as a matter of state law will not satisfy the exhaustion requirement. *See Riggins v. McMackin*, 935 F.2d 790, 792-93 (6th Cir. 1991). So long as the petitioner has fully and fairly presented his federal claim to the state's highest court, that claim will be totally exhausted even if the state courts do not consider the claim on the merits. *See Harris v. Rees*, 794 F.2d 1168, 1173-74 (6th Cir. 1986).

Where a petitioner has not fully and fairly presented a federal claim to the state's highest court or when state courts have held that consideration of petitioner's claim is barred due to the procedural default in state court, a federal court ordinarily will not consider the merits of that claim unless the petitioner can show cause to excuse his failure to present the claims appropriately in state court, and actual prejudice as a result. *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Teague v. Lane*, 489 U.S. 288, 298-99 (1989). The one exception to this rule is where a petitioner submits new and reliable evidence that a constitutional violation has probably resulted in the conviction of an innocent individual. In cases involving probable innocence, courts address the merits of the defaulted claim to avoid a fundamental miscarriage of justice. *See Schlup v. Delo*, 513 U.S. 298, 317-23 (1995).

a very heavy burden. *See United States v. Horton*, 847 F.2d 313, 316 (6th Cir. 1988). As a general rule, joint trials are favored. *See United States v. Dempsey*, 733 F.2d 392, 398 (6th Cir. 1984). Jurors are presumed to follow the instructions of the court and to give each defendant's case separate consideration. *See Francis v. Franklin*, 471 U.S. 307, 324 n.9 (1985). The mere potential for confusion, standing alone, will not outweigh society's interest in the speedy and efficient resolution of criminal trials. *See United States v. Moore*, 917 F.2d 215, 222 (6th Cir. 1990).

In *Buchanan*, 483 U.S. at 402, the Supreme Court analyzed the joint trial of Stanford and Buchanan. Appraising the constitutionality of death-qualifying a mutual jury in a case where one co-defendant is death-eligible and the other is death-ineligible, where the death-ineligible co-defendant fears that a death-qualified jury is likely to render more severe punishment, it held that a joint trial was constitutional. *Buchanan*, 483 U.S. at 419-20. Although it did not specifically address the constitutionality of a joint trial from the death-eligible co-defendant's perspective, the Court's holding nonetheless demonstrates that joint trials for death-eligible and death-ineligible co-defendants are permissible. If anything, because of the exclusion of presumably more sympathetic jurors who could not be death-qualified, it would be far more plausible that the death-ineligible co-defendant would be prejudiced.

Stanford was not entitled to a separate trial from co-defendant Buchanan. He makes no concrete allegation that his due process rights were violated by a joint trial beyond the conceptual argument that a jury may have viewed him as the more culpable co-defendant because he was death-eligible and Buchanan was death-ineligible. The jury was repeatedly admonished to separately consider the evidence as to each defendant, and the record reveals no indication that the court's instructions were ignored. By merely alleging potential juror confusion, Stanford has not satisfied his burden of showing that separate trials were necessary.

(finding that a joint trial for death-eligible and death-ineligible co-defendants is permissible), we will not mandate uniform prosecution of all co-defendants in capital cases.

We affirm the district court's denial of Stanford's four *Enmund* claims.

### d)  Trial Severance

Alternatively, Stanford argues that his trial should have been severed from co-defendant Buchanan's to ensure a fair trial under the Sixth, Eighth, and Fourteenth Amendments. According to Stanford, because he was eligible for the death penalty and Buchanan was not, a jury would consider him the more culpable of the two co-defendants and sentence him more severely. Exercising his discretion, the trial judge denied Stanford's severance motions. The district court did not find constitutional error in Judge Leibson's denial of severance, and neither do we.

A defendant is not entitled to severance merely because he might have had a better chance of acquittal in a separate trial. *See Zafiro v. United States*, 506 U.S. 534, 540 (1993). Nor does he have a right to a separate trial merely because defendants present antagonistic defenses. *See United States v. Day*, 789 F.2d 1217, 1224 (6th Cir. 1986) (holding that absent some indication that the alleged antagonistic defendants misled or confused the jury, the mere fact that co-defendants blame each other does not compel severance). Courts should grant a severance "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro*, 506 U.S. at 539. Granting or denying severance is within the trial judge's discretion. *See Glinsey v. Parker*, 491 F.2d 337, 343 (6th Cir. 1974). And, a state trial court's alleged abuse of discretion, without more, is not a constitutional violation. *See Sinistaj v. Burt*, 66 F.3d 804, 805, 808 (6th Cir. 1995).

A petitioner seeking habeas relief on the basis of a trial court's failure to sever his trial from his co-defendant's bears

### IV.  Discussion

### a)  *Morgan* claims

Stanford contends that, pursuant to the Supreme Court's holding in *Morgan v. Illinois*, 504 U.S. 719 (1992), he was unconstitutionally denied a right to "life-qualify" his jury. Specifically, he alleges three constitutional violations. First, he argues that the state trial court's refusal to ask or allow defense counsel to ask life-qualifying voir dire questions constituted constitutional error. Second, he argues that the district court erred in concluding that he was not entitled to the benefit of *Morgan*. And, third, he argues that his counsel's failure to life-qualify his jury constituted ineffective assistance of counsel. He is not entitled to habeas relief on any of these *Morgan* claims.

In *Witherspoon v. Illinois*, 391 U.S. 510 (1968), the Supreme Court determined that it was proper to ask prospective jurors about their views concerning the death penalty during voir dire in capital cases. Such "death qualifying" questions would ensure the impartiality of jurors by allowing the state to properly exercise challenges for cause against potential jurors unwilling to return a capital sentence. *See id.* at 520-23. In *Morgan*, defense counsel was given the parallel ability to identify those jurors who would always impose the death penalty. *Morgan* held that "on voir dire the court must, on defendant's request, inquire into the prospective jurors' views on capital punishment" because a prospective juror who would always impose the death penalty must not be empaneled. *Morgan*, 504 U.S. at 726. "If even one such juror is empaneled and the death sentence is imposed, the State is disentitled to execute the sentence." *Id.* at 729.

### i)  Voir Dire

Two types of voir dire were conducted during Stanford's trial. First, the court conducted individual voir dire, after which counsel asked limited-scope follow-up questions. And, second, counsel conducted general voir dire in open court.

At the commencement of individual voir dire, Stanford's counsel filed "Defendant's Proposed Voir Dire Questions Concerning Capital Punishment," a series of twenty-nine questions, six of which were life-qualifying. The trial court said that it would be asking "all of the individual voir dire questions of the Jury" and that it would inquire into two areas: death qualification and pre-existing personal commitments. Immediately thereafter, Stanford's counsel inquired as follows: "We have tendered proposed questions to the capital phase which I take it are overruled?" The trial judge responded "Yeah." During individual voir dire, the trial court asked only one capital question: "Do you have any conscientious scruples against imposing the death penalty, such that you could not consider it under the circumstances in this or any other case and regardless of what the evidence may be?"

It is not known whether the court would have permitted Stanford's counsel to ask "life-qualifying" questions during general voir dire. His counsel never sought permission to ask such questions and, in the end, did not ask any life-qualifying questions during general voir dire.

### ii) *Morgan* Applicability

The parties dispute *Morgan*'s applicability. First, they dispute whether Stanford's *Morgan* claim is cognizable on habeas review. And, second, they dispute whether *Morgan*, decided in 1992, applies retroactively to Stanford, whose conviction became final in 1989. Whether *Morgan* applies retroactively is a question of first instance.

As an initial matter, we agree with the district court's well-founded conclusion that the *Morgan* issue is cognizable on habeas review because the Kentucky Supreme Court reached the merits of the that issue. *See Stanford v. Commonwealth*, 734 S.W.2d 781, 785-86 (Ky. 1987). Furthermore, since the *Morgan* issue was properly raised in Stanford's habeas petition and certificate of appealability, it is now before this court. That said, we leave the question of whether *Morgan* should be applied retroactively for another day. We neither

death-eligibility to triggermen, *see Tison v. Arizona*, 481 U.S. 137, 158 (1987) (holding "that major participation in the felony committed, combined with reckless indifference to human life, is sufficient to satisfy" death-eligibility pursuant to *Enmund*), the premise underlying his *Enmund* claims -- that the trial court decided that Buchanan was death-ineligible -- is incorrect.

The trial court made it clear that Buchanan's death-ineligible prosecution was not the result of a finding of fact on its part but rather a concession and decision by the prosecutor. The prosecutor acted well within his authority by deciding to prosecute one co-defendant as death-eligible and the other as death-ineligible. In *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978), the Supreme Court stated that "[i]n our system, so long as the prosecutor had probable cause to believe that the accused committed a offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion."

More to the point, even if the trial court had erroneously decided that Buchanan could only be prosecuted as death-ineligible, Stanford would still lack standing to object to the court's misapplication of *Enmund* to Buchanan. While it is true that Buchanan received a windfall because he was death-ineligible, the fact that he received a windfall did not unfairly prejudice Stanford. *See Harris v. Rivera*, 454 U.S. 339, 345-48) (1981) (holding that even if the acquittal of a co-defendant rested on an improper ground, that error would not create a constitutional defect in a defendant's guilty verdict which was supported by sufficient evidence and was the product of a fair trial). It is undisputed that Stanford could be prosecuted as death-eligible and that the State had complete authority to prosecute him as such.

If we were to accept Stanford's *Enmund* claims as valid, there could only be joint trials where all co-defendants are prosecuted uniformly. Given the Supreme Court's decision in *Buchanan v. Kentucky*, 483 U.S. 402, 418-20 (1987)

The district court did not err by finding any *Bruton* violation harmless. Overwhelming evidence of Stanford's guilt was presented at trial. First, the jury learned that Stanford had twice admitted killing Poore. Days after his arrest, Stanford sneaked up behind a security guard, put the end of a pencil against the guard's ear, and said: "Click, click, click, just like the girl, I'm going to blow your fucking brains out." And days later, a corrections officer overheard Stanford bragging that he sodomized, shot, and killed Poore because she could recognize and identify him. Second, Johnson, the getaway driver, provided eyewitness testimony that Stanford shot Poore. And third, a mountain of physical and circumstantial evidence – Stanford's fingerprints were lifted from Poore's car; hairs matching Stanford's head and pubic hair were found on Poore's body; Stanford was seen carrying away stolen cases of cigarettes from the Checker gas station; and stolen Checker keys were found at Stanford's mother's home – provided abundant evidence of Stanford's guilt. Thus, any *Bruton* violation constituted harmless error.

### c) *Enmund* Claims

Stanford also alleges four separate constitutional violations arising under *Enmund v. Florida*, 458 U.S. 782 (1982). His underlying *Enmund* claim, which gives rise to his other three, is that the district court erred by misinterpreting *Enmund* as it applied to co-defendant Buchanan and, as a result, the death penalty was sought against him but not against Buchanan. He argues that he was prejudiced by Buchanan's being tried as death-ineligible because, since he was death-eligible, the jury would view him as the more culpable defendant and sentence him more severely. Stanford's other three *Enmund* claims are various ineffective assistance of counsel claims. We affirm the district court's denial of Stanford's *Enmund* claims.

All of Stanford's claims arise from his belief that the trial court erred by interpreting *Enmund* to mean that co-defendant Buchanan had to be tried as death-ineligible because he was not the triggerman. While Stanford is correct that the Supreme Court later clarified that *Enmund* did not limit

accept nor reject the district court's holding that *Morgan* created a new rule of law that, under *Teague v. Lane*, 489 U.S. 288 (1989), could not be retroactively applied to Stanford's case.

For the sake of argument, we assume that *Morgan* applies retroactively to Stanford's case, meaning that he was entitled to ask life-qualifying questions of his jury venire panel. *Morgan* requires a trial court to permit life-qualifying questions during voir dire only where a defendant's counsel requests that such questions be asked. *Morgan* does not, however, specifically require that defendant's counsel be permitted to ask life-qualifying questions during individual voir dire. Under *Morgan*, a defendant's right to life-qualify his jury could also be satisfied during general voir dire. We adopt the sound analysis of the Kentucky Supreme Court:

> Simply put, the rulings and discussions of record concerning the list of questions proposed by the defendants never addressed the propriety of asking the questions during the general voir dire. We can find no rulings on the merits of the questions nor any hint of how the court would have ruled had appellant's counsel attempted to ask the questions of the jurors during the collective voir dire. As the trial court did not make any rulings adverse to the appellant during his counsel's questioning of the jury, we can find no error prejudicial to appellant.... Why, however, counsel chose not to explore the veniremen's predilection for imposing the death penalty, is a question which cannot be attributed to any action or failing of the trial court.

*Stanford v. Commonwealth*, 734 S.W.2d at 785-86 (internal citations and quotations omitted).

Even applying *Morgan* retroactively as Stanford requests, the trial court's refusal to permit life-qualifying questions during individual voir dire would not constitute federal constitutional error. Because his counsel was not precluded from asking life-qualifying questions during general voir dire,

Stanford is not entitled to habeas relief on his first two *Morgan* claims.

### iii) Ineffective Assistance of Counsel

As an alternative to his claim that the trial court violated his *Morgan* right to life-qualify his jury, Stanford argues that his counsel's failure to life-qualify the jury during general voir dire constituted ineffective assistance of counsel. We hold that this claim fails too.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court articulated a test for ineffective assistance of counsel. There are two components to the *Strickland* test:

First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland*, 466 U.S. at 687. *Strickland* specifically holds that the two prongs of its test need not be applied in order or in totality. *See id*. at 697. For instance, if a defendant could not make the requisite showing on the performance prong, the court need not undertake analysis under the prejudice prong. Stanford's *Morgan* ineffective assistance of counsel claim does not satisfy either prong of the *Strickland* test.

To demonstrate ineffective assistance under the performance prong, a "defendant must overcome the presumption that, under the circumstances [at the time of counsel's conduct], the challenged action might be considered sound trial strategy." *Id.* at 689 (internal quotation and citation omitted). Stanford has not overcome that presumption. *Morgan* does not mandate that life-qualifying questions be asked of potential jurors in every case. Instead,

the crimes. *See Cruz v. New York*, 481 U.S. 186, 194 (1987); *Gilliam v. Mitchell*, 179 F.3d 990, 995 (6th Cir. 1999).

The confession of Stanford's co-defendant, David Buchanan, was read into evidence by Detective Hall during the defendants' joint trial. Buchanan never testified. The confession was redacted so that Stanford's name was replaced by "the other person" wherever it appeared. Despite this redaction, the district court found that Buchanan's confession directly incriminated Stanford in violation of *Bruton*. From the confession, the jury learned that "the other person" 1) requested that Buchanan bring the gun to the robbery, 2) carried the gun during the commission of the offenses at the Checker gas station, 3) sodomized the victim, and 4) shot the victim twice.

The district court found that the jury would reasonably have concluded that the "other person" was Stanford, while the State argues that the jury could also have reasonably concluded that the "other person" was Calvin Buchanan. At trial, the defense's theory was that Calvin Buchanan, David's uncle, killed Poore. Calvin Buchanan's name was mentioned several times during the trial, but it is not likely that a jury would have believed him to be the "other person." It was Stanford and not Calvin Buchanan who sat as a defendant before the jury, and David Buchanan's statements about the "other person" were placed into evidence by the prosecution, which the jury knew was pushing for the conviction of Stanford as the shooter.

Based on our 1978 decision in *Hodges*, which was supported later by the Supreme Court in *Gray*, it appears that the district court was correct that the replacement of "Stanford" with "the other person" in Buchanan's confession did not prevent a *Bruton* violation. Merely substituting the term "other person" for "Stanford" would not have prevented the jury from drawing the natural conclusion that the "other person" and Stanford were indeed one and the same. Nevertheless, any *Bruton* violation was harmless.

exclusion of the confession, 2) severance of the trial, or 3) redaction of the confession to avoid mention or obvious implication of the non-confessing defendant. *See Richardson v. Marsh*, 481 U.S. 200, 209 (1987).

*Bruton* violations can occur even where a defendant's name is redacted or replaced from a non-testifying co-defendant's confession. In *Hodges v. Rose*, 570 F.2d 643 (6th Cir. 1978), the Sixth Circuit held that admission of a redacted non-testifying co-defendant's statement containing the word "blank" in place of the defendant's name violated the *Bruton* rule. "Although the other party is referred to as 'blank' in the redacted statement, the circumstances of the case and other evidence admitted virtually compel the inference that 'blank' is [the defendant]." *Id*. at 647. And, in *Gray v. Maryland*, 523 U.S. 185, 186 (1988), the Supreme Court discussed the danger of redacting a confession by simply removing a defendant's name: "[T]he obvious deletion [of a defendant's name] may well call the jurors' attention specially to the removed name. By encouraging the jury to speculate about the reference, the redaction may overemphasize the importance of the confession's accusation."

Where a *Bruton* violation occurs, a court must then determine whether that violation is harmless. The court must decide "'whether the 'minds of an average jury'" would have found the State's case against a defendant "'significantly less persuasive'" had the incriminating portion of the co-defendant's statement been excluded. *Hodges*, 570 F.2d at 643 (quoting *Schneble v. Florida*, 405 U.S. 438, 446 n.8 (1986)). Relief may be granted on collateral review only if the trial error "had substantial and injurious effect or influence in determining the jury's verdict. Under this standard, habeas petitioners ... are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice.'" *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (internal quotation and citation omitted). An erroneous admission of a non-testifying co-defendant's confession can constitute harmless error where the defendant claiming a *Bruton* violation confessed to full participation in

*Morgan* holds that a defendant has the right to life-qualify his jury upon request. By premising a defendant's right to life-qualify upon defense counsel's making a request to life-qualify, *Morgan* suggests that there are instances where defense counsel might choose not to ask life-qualifying questions as a matter of strategy. Pursuant to *Morgan*, failure to life-qualify a jury is not per se ineffective assistance of counsel.

Stanford presents no evidence to counteract our presumption that his counsel's failure to ask life-qualifying questions during general voir dire constituted trial strategy. The record is silent as to the rationale behind his counsel's performance. Thus, we can do no more than speculate as to some of the reasons why Stanford's counsel might not have asked life-qualifying questions during general voir dire. First, he may have mistakenly but honestly believed that, when Judge Leibson excluded his life-qualifying questions during individual voir dire, Judge Leibson was excluding those questions for all stages of voir dire, including general voir dire. Second, counsel may not have wanted to ask life-qualifying questions during general voir dire because he did not want individual jurors to hear one another's answers to life-qualifying questions. Perhaps he was afraid that a prospective juror espousing death as a punishment would influence other jurors. Third, by the time general voir dire occurred, defense counsel may have been satisfied with the composition of the jury and confident in its ability to honestly and ably perform its duties. And, fourth, if the jury pool was satisfactory, defense counsel may have calculated that asking additional life-qualifying questions might aid the *prosecution* in deciding how to use its peremptory challenges. *See Brown v. Jones*, 255 F.3d 1273, 1279 (11th Cir. 2001) ("[Counsel's] decision not to ask potential jurors whether they would automatically vote to impose the death penalty... appears to [be] a tactical decision, because it seems reasonable for trial counsel to want to focus the jury on the idea of the death penalty as little as possible.").

Since our "scrutiny of counsel's performance must be highly deferential," *Strickland,* 466 U.S. at 689, and Stanford has presented no evidence to rebut the presumption that counsel's failure to ask life-qualifying questions during general voir dire constituted sound trial strategy, we reject his ineffective assistance claim under *Strickland's* performance prong.

Alternatively, Stanford does not satisfy the prejudice prong of the *Strickland* test. To demonstrate ineffective assistance under the prejudice prong, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. "In making the determination whether the specified errors resulted in the required prejudice, a court should presume, absent challenge to the judgment on grounds of evidentiary insufficiency, that the judge or jury acted according to the law." *Id.* "The assessment of prejudice should proceed on the assumption that the decisionmaker is reasonably, conscientiously, and impartially applying the standards that govern the decision." *Id.* at 695. "[T]he question is whether there is a reasonable probability that... the sentencer– including an appellate court, to the extent it independently reweighs the evidence– would have concluded that the balance of aggravating and mitigating circumstances did not warrant death." *Id.* We also must ask whether the trial was fundamentally fair and whether counsel's errors likely undermined the reliability of and confidence in the result. *See Lockhart v. Fretwell*, 506 U.S. 364, 369-70 (1993).

Under *Strickland's* prejudice prong, Stanford's counsel's failure to ask life-qualifying questions during general voir dire did not constitute ineffective assistance of counsel. First, there is no evidence that any potential jurors were inclined to always sentence a capital defendant to death. Second, nothing in the record indicates that counsel's failure to ask life-qualifying questions led to the impanelment of a partial jury.

Third, considering the totality of the evidence, there is no reasonable probability that, even if defense counsel erred, the sentencer would have concluded that the balance of aggravating and mitigating circumstances did not warrant death. *See Strickland*, 466 U.S. at 695. As is required pursuant to Ky. Rev. Stat. Ann. § 532.075, the Kentucky Supreme Court reviewed Stanford's death sentence on direct appeal and determined that the death sentence was supported by the evidence, i.e., the balance of aggravating and mitigating circumstances warranted death. *See Stanford*, 734 S.W.2d at 793. Stanford's trial was fundamentally fair and counsel's failure to life-qualify the jury did not undermine the reliability of and confidence in the result. *See Brown*, 255 F.3d at 1279 (holding, on similar grounds, that counsel's failure to life-qualify a jury did not constitute ineffective assistance of counsel under *Strickland*'s prejudice prong).

We reject Stanford's claim that the failure of his trial counsel to ask life-qualifying questions constituted ineffective assistance of counsel.

#### b) *Bruton* claim

Next, Stanford argues that the district court erred by finding that the admission of non-testifying co-defendant David Buchanan's confession, as recounted by Detective Jerry Hall to the jury, constituted a harmless violation of the *Bruton* rule. We agree with the district court.

In *Bruton v. United States*, 391 U.S. 123 (1968), the Supreme Court held that admission of a co-defendant's confession implicating the non-confessing defendant violated the non-confessing defendant's Sixth Amendment rights to confrontation and cross-examination where the co-defendant did not testify at trial. *See id.* at 132, 136. If the confession clearly implicated the non-confessing defendant for the crimes charged, even a limiting instruction could not remove the taint caused by the lack of opportunity to confront the witness. *See Smith v. Estelle*, 569 F.2d 944, 950 (5th Cir.1978). Hence, where a *Bruton* situation exists, the court may protect the non-confessing defendant's Sixth Amendment rights by 1)