NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0277n.06

No. 10-1604

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

*Mar 13, 2012*

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| CHRISTINE JACKSON, | ) | |
| | ) | ON APPEAL FROM THE |
| *Petitioner-Appellant*, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| v. | ) | DISTRICT OF MICHIGAN |
| | ) | |
| CLARICE STOVALL, Warden | ) | O P I N I O N |
| | ) | |
| *Respondent-Appellee.* | ) | |

BEFORE:     COLE and STRANCH, Circuit Judges; CARR, District Judge.[*]

COLE, Circuit Judge.  Petitioner Christine Jackson appeals the district court's denial of her petition for habeas corpus.  The district court granted a Certificate of Appealability to review Jackson's Confrontation Clause claims and, finding them meritless, we AFFIRM the judgment of the district court.

I.  BACKGROUND

In April 2001, a Michigan jury convicted Jackson of two counts of first-degree premeditated murder and two counts of conspiracy to commit first-degree murder, and she was later sentenced to concurrent terms of life imprisonment without possibility of parole.  This conviction arose from the October 1998 murders of Kevin Garland and Mary Ann Simmons.

---

[*] The Honorable James G. Carr, Senior United States District Judge for the Northern District of Ohio, sitting by designation.

On October 7, 1998, Timothy Landers, Jackson's co-defendant, agreed to sell three kilograms of cocaine to Michael McConico. Rather than purchase the drugs, McConico robbed Landers and shot him in the leg. Landers blamed Garland for this incident because Garland introduced McConico to him, and Landers sought revenge. Landers, accompanied by Jackson, Eric Willis, and Ronney Johnson, tracked down and killed Garland and then Garland's girlfriend, Simmons. After these murders, Landers, Jackson, Willis, and Johnson left Michigan and drove to California. Facing the need to move some furniture in Michigan, Jackson and Johnson returned to Michigan in November 1998 and while there, police pulled over Johnson's van and found a concealed weapon. Johnson was charged with carrying a concealed weapon, but the prosecutor later dropped the charges in exchange for Johnson's testimony at Jackson's and Landers's homicide trial.

At trial, among the prosecution's witnesses were Johnson, McConico, and Angela Wallace. Johnson provided eyewitness testimony of Garland's shooting as well as Landers's order to Willis and Jackson to "take care" of Simmons. McConico testified as to the motive, admitting that he robbed and shot Landers in the leg. Wallace, a California attorney, testified as to her role in representing Johnson on his concealed-weapon charge.

The prosecution's strategy included the theory that Jackson hired Wallace to represent Johnson in his weapon charge in order to control Johnson and prevent him from implicating her in the murders. Johnson testified that shortly after his arrest, Wallace visited his mother's home in California, informing her that Johnson was in trouble and offering to represent him. At Johnson's arraignment, Clarence Tucker, a Michigan attorney, appeared and attempted to provide representation, which Johnson declined. Wallace testified that she arranged for Tucker to appear on

Johnson's behalf. Wallace further testified, contrary to the prosecutor's expectations, that it was Johnson's nephew, not Jackson, who retained her in the concealed-weapon charge, and indicated that she first met Jackson in February 1999, months after Johnson's arraignment. Wallace explicitly stated both that she was not asked by Jackson to represent Johnson nor was she acquainted with Jackson in February 1998, and then she was excused from further testimony in the trial and returned to California.

The next day, the prosecutor informed the trial court that he had obtained a copy of Wallace's grand jury testimony from a California district court, which contained prior inconsistent statements regarding Wallace's relationship with Jackson. In this grand jury testimony, Wallace admitted to meeting Jackson in March 1998, not February 1999. As this fact was directly contradictory to her in-court testimony, the prosecutor sought its admission for impeachment. The trial court instructed the prosecutor to subpoena Wallace and have her return to court to explain this prior inconsistent statement. The prosecutor contacted Wallace, issued another subpoena, and made her travel arrangements. In the following days, the prosecutor unsuccessfully tried to reach Wallace and eventually learned from Wallace's sister that Wallace left for Texas, leaving no address or telephone number. Wallace discontinued all contact with the prosecutor and did not arrive on the flight the prosecutor arranged for her.

Declaring Wallace unavailable, the trial court permitted the prosecution to use Wallace's grand jury testimony for the limited purpose of impeachment. Prior to admitting the transcript into the record, the trial court provided a limiting instruction:

> First of all, this testimony can only be considered in judging the credibility of the witness Angela Wallace. It cannot be used for any other purpose, that is, it cannot be used as proof of any of the facts stated in that transcript. Again, it can only be used to judge the credibility of the witness Angela Wallace and for no other purpose.
>
> . . . It cannot be used for any other purpose. Again, I'll repeat, it cannot be used as facts of any of the statements that are contained within the transcript.

Wallace's prior inconsistent statement was then entered into the record.

Following her conviction, Jackson appealed to the Michigan Court of Appeals, alleging Confrontation Clause violations, prosecutorial misconduct, ineffective assistance of counsel, violations of due process, and evidentiary errors. The appellate court found Jackson's arguments meritless and denied relief. *See People v. Jackson*, No. 236360, 2004 WL 2913643 (Mich. Ct. App. Dec. 16, 2004) (per curiam). With regard to Jackson's Confrontation Clause claims, the Court of Appeals stated:

> The trial court's decision to allow the prosecutor to introduce Angela Wallace's prior testimony in a federal case, for the limited purpose of impeaching her trial testimony, did not contravene defendant's confrontation rights because the Confrontation Clause does not bar the use of testimonial statements for a purpose other than to establish the truth of the matter asserted. We presume that the jury followed the limiting instruction given by the trial court.

*Id.* at *1 (citations omitted). Jackson then unsuccessfully sought discretionary review in the Michigan Supreme Court. *See People v. Jackson*, 703 N.W.2d 812 (Mich. 2005) (table). On state collateral review, Jackson raised two grounds for relief: ineffective assistance of counsel and the Confrontation Clause violation. The Wayne County Circuit Court denied both claims, and the Michigan Court of Appeals and Michigan Supreme Court affirmed. *See People v. Jackson*, 742 N.W.2d 379 (2007); *People v. Jackson*, No. 275785 (Mich. Ct. App. May 18, 2007).

- 4 -

Jackson filed a petition for the writ of habeas corpus in the Eastern District of Michigan, advancing three grounds for relief: a Confrontation Clause violation, ineffective assistance of appellate counsel, and prosecutorial misconduct. The district court denied Jackson's petition, but granted a Certificate of Appealability ("COA") on the Confrontation Clause claim. Jackson timely appealed.

## II. ANALYSIS

*A. Standard of Review*

This Court reviews a district court's legal conclusions, including its ultimate decision to grant or deny the writ, de novo. *Satterlee v. Wolfenbarger*, 453 F.3d 362, 365 (6th Cir. 2006) (Moore, Cole, Clay). Jackson filed his habeas petition in May 2007, after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), and so AEDPA governs this Court's review of Jackson's claims. *See* 28 U.S.C. § 2254(d). Section 2254(d) imposes the following standard of review in a habeas case:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Under § 2254(d)(1), an "unreasonable application" of clearly established federal law occurs when "the state court identifies the correct governing legal principle from [the

Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). "In order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003) (citation omitted); *see Williams*, 529 U.S. at 409. Section 2254(d)(1) limits "the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412.

B. Wallace's Out-of-Court Statements

The Sixth Amendment grants a criminal defendant the right "to be confronted with the witnesses against him." U.S. Const. amend. VI. The Supreme Court has interpreted this right to require that "[t]estimonial statements of witnesses absent from trial . . . only [be admitted] where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine." *Crawford v. Washington*, 541 U.S. 36, 59 (2004). The term testimonial "applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial." *Id.* at 68. While this confrontation right applies only to testimonial statements, *see Davis v. Washington*, 547 U.S. 813, 823-26 (2006), "[t]he Clause also does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." *Crawford*, 541 U.S. at 59 n.9. "The admission of a testimonial statement in and of itself is not enough to trigger a violation of the Confrontation Clause. Instead, the statement must be used as hearsay—in other words, it must be offered for the truth of the matter asserted." *United States v. Pugh*, 405 F.3d 390, 399 (6th Cir. 2005).

Jackson alleges that the admission of Wallace's grand jury testimony violated the Confrontation Clause, as it was an out-of-court testimonial statement used against a criminal defendant without the opportunity for cross examination. Because this statement took place before a grand jury, it is undisputed that it was not subject to cross examination and that it was testimonial in nature. *See Crawford*, 541 U.S. at 68. What is disputed is whether the statement was used as hearsay to prove the truth of the matter asserted or solely as impeachment of Wallace's credibility. Only if the statement was used substantively, to prove the truth of the matter asserted, does Jackson have a cognizable Confrontation Clause claim. *See id.* at 59 n.9; *Pugh*, 305 F.3d at 399.

When the trial court admitted Wallace's grand jury testimony, it gave a limiting instruction, explaining the narrow purposes for which the jury could consider the statement. That instruction stated, three separate times, that the statement could "only be considered in judging the credibility of the witness Angela Wallace" and that it could not "be used for any other purpose." We must presume that a jury follows a trial court's instructions. *See Richardson v. Marsh*, 481 U.S. 200, 206 (1987); *see also Shannon v. United States*, 512 U.S. 573, 585 (1994). Nevertheless, Jackson contends that the statement was, in fact, used substantively because it had impeachment value only if accepted as true. According to Jackson, unless the jury believed the content of the out-of-court assertion that Wallace knew Jackson in February 1998, Wallace's prior inconsistent statement had no impeachment value; therefore, the prosecution actually used the grand jury testimony substantively.[1] Jackson's argument underestimates the importance of prior inconsistent statements.

[1]Jackson also argues that the prosecutor improperly used Wallace's prior testimony substantively during his rebuttal to closing argument. Because this issue was raised as a

As the district court noted, "[t]he impeaching value of a prior inconsistent statement comes not from the fact that the prior statement is true and the later statement is false, but from the very fact of inconsistency." *Jackson v. Stovall*, No. 2:08-CV-10094, 2010 WL 1754446, * 13 (E.D. Mich. 2010) (citing McCormick on Evidence § 34 ("The attack by prior inconsistent statement is not based on the theory that the present testimony is false and the former statement true. Rather, the attack rests on the notion that talking one way on the stand and another way previously . . . rais[es] a doubt as to the truthfulness of both statements.")).

Regardless, the sole issue before this Court is not to determine the precise use of the statement, but rather whether the state court unreasonably applied Supreme Court precedent in finding that its admission did not violate the Confrontation Clause. The Michigan Court of Appeals held that Wallace's statement "did not contravene [Jackson's] confrontation rights because the Confrontation Clause does not bar the use of testimonial statements for a purpose other than to establish the truth of the matter asserted." *Jackson*, 2004 WL 2913643, at *1. All relevant evidence suggests that the evidence was not admitted substantively: the prosecutor introduced it exclusively as a prior inconsistent statement to reflect on Wallace's credibility; the trial court expressly limited its purpose to impeachment; and the trial court provided a clear limiting instruction to the jury, prohibiting it from considering the statement as substantive evidence. Therefore, we are unable to

---

prosecutorial misconduct claim in Jackson's petition and it lies outside the scope of the COA, we lack jurisdiction to review this claim. 28 U.S.C. § 2253(c)(1) ("Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals . . . ."); *see also Willis v. Jones*, 329 F. App'x 7, 12 (6th Cir. 2009) ("Without a COA, a court of appeals lacks jurisdiction over a denial of habeas relief.").

conclude that the state court's determination that Wallace's statement was admitted solely for impeachment purposes, and not hearsay, is "objectively unreasonable." *See Wiggins*, 539 at 520-21.

## III. CONCLUSION

The district court's denial of the writ of habeas corpus is AFFIRMED.