Tim LANDERS, Petitioner-Appellant,

v.

Kenneth ROMANOWSKI, Warden,
Respondent-Appellee.

No. 15-1753

United States Court of Appeals,
Sixth Circuit.

Filed January 30, 2017

Tim Landers, Pro Se.

Bruce H. Edwards, Office of the Attorney General of Michigan, Lansing, MI, for Respondent-Appellee.

## ORDER

Tim Landers, a Michigan prisoner proceeding pro se, applies for a certificate of appealability (COA) to appeal the district court's order denying his 28 U.S.C. § 2254 habeas corpus petition. *See* Fed. R. App. P. 22(b)(1).

After a second trial, a jury convicted Landers of multiple counts of first-degree premeditated murder, conspiracy to commit first-degree murder, and possession of a firearm during the commission of a felony. The trial court sentenced Landers to a two-year term of imprisonment for possession of a firearm followed by four concurrent life terms of imprisonment for the murder and conspiracy-to-commit-murder convictions. The Michigan Court of Appeals affirmed his convictions, and the Michigan Supreme Court denied leave to appeal. *People v. Landers*, Nos. 235918, 235919, 2004 WL 1089500 (Mich. Ct. App. May 13, 2004), *appeal denied*, 471 Mich. 949, 690 N.W.2d 111 (Mich. 2004) (table).

Landers filed a 28 U.S.C. § 2254 habeas corpus petition in 2006, and later moved to stay federal proceedings to pursue additional remedies in state court. On July 6, 2006, Landers filed a motion seeking state post-conviction relief, which the trial court denied. The Michigan Court of Appeals and the Michigan Supreme Court denied leave to appeal. *People v. Landers*, No. 280800 (Mich. Ct. App. Apr. 16, 2008), *appeal denied*, 769 N.W.2d 200 (Mich. 2008) (table). Landers resumed his federal collateral review by requesting leave to amend his habeas corpus petition in 2008. His amended petition advanced twelve claims for relief: (1) the trial court deprived him of his constitutional rights by not severing his trial from his co-defendant Christine Jackson's trial; (2) the prosecutor engaged in misconduct; (3) the trial court suppressed evidence relating to witness Ronney Johnson's character for untruthfulness; (4) the trial court erred in admitting the transcript of Johnson's arraignment; (5) the trial court erred by allowing the prosecutor to read Angela Wallace's prior testimony to the jury; (6) the trial court violated his rights by refusing to admit impeachment evidence; (7) the trial court erred by admitting hearsay testimony; (8) the prosecutor committed perjury; (9) trial counsel was ineffective; (10) the combined effect of errors deprived him of due process and a fair trial; (11) the trial court violated his rights under the Confrontation Clause by allowing Kelvin Garland to testify about what the deceased victims said to him; and (12) there is newly discovered evidence that the prosecutor committed a fraud on the state court.

The district court denied Landers's habeas corpus petition on the merits and declined to issue a COA, but granted Landers permission to proceed in forma pauperis on appeal. Landers filed an application for a COA in this court, challenging the district court's opinion and order as to claims one through three, five, and seven through twelve. Landers does not raise claims four and six in his application, and they are therefore waived. *See* 28 U.S.C. § 2253(c)(3) (requiring COA applicants to

indicate the specific issues that satisfy the § 2253(c)(2) standard); *Jackson v. United States*, 45 Fed.Appx. 382, 385 (6th Cir. 2002).

A COA may issue when an "applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "The COA determination under § 2253(c) requires an overview of the claims ... and a general assessment of their merits." *Miller-El v. Cockrell*, 537 U.S. 322, 336, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003). "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000).

Under the Antiterrorism and Effective Death Penalty Act, the district court may not grant habeas relief on a claim that was adjudicated on the merits in state court "unless the state court's decision 'was contrary to, or involved an unreasonable application of, clearly established Federal law,' meaning Supreme Court precedent, or 'was based on an unreasonable determination of facts in light of the evidence presented' during the state court proceedings." *Railey v. Webb*, 540 F.3d 393, 397 (6th Cir. 2008) (quoting 28 U.S.C. § 2254(d)(1)–(2)). "[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see Warren v. Smith*, 161 F.3d 358, 360–61 (6th Cir. 1998).

## I.   Severance

■ Landers's first claim challenges the trial court's decision not to sever his trial

from his co-defendant Jackson's. He argues that his convictions were based only on the evidence presented against Jackson. "A defendant is not entitled to severance merely because he might have had a better chance of acquittal in a separate trial," or because a co-defendant will present an antagonistic defense. *Stanford v. Parker*, 266 F.3d 442, 458 (6th Cir. 2001). Instead, "[c]ourts should grant a severance 'only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence.'" *Id.* at 458–59 (quoting *Zafiro v. United States*, 506 U.S. 534, 540, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993)).

Here, Landers acknowledges that Johnson's testimony was sufficient for the jury to convict him, but he argues that the jury would not have convicted him without the additional evidence against Christine Jackson, which "completely negated Petitioner's defense." However, the trial court instructed the jury to consider each defendant separately, that each defendant was entitled to have the case decided on the evidence and the law that applies to them, and that if any evidence was limited as to one defendant, it should not be considered against any other. Because jurors are presumed to follow the instructions that they are given, *see Richardson v. Marsh*, 481 U.S. 200, 211, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987), and in a joint trial "[j]uries are presumed to be capable of following instructions ... regarding the sorting of evidence and the separate consideration of multiple defendants," *United States v. Walls*, 293 F.3d 959, 966 (6th Cir. 2002), reasonable jurists would not debate the district court's rejection of this claim.

## II.   Prosecutor Misconduct

Landers argues in claims two, eight, and twelve that the prosecution committed acts

of misconduct, perjury, and fraud, thereby violating his right to due process. "Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004). "[T]he appropriate standard of review for [claims of prosecutorial misconduct] on writ of habeas corpus is 'the narrow one of due process, and not the broad exercise of supervisory power.'" *Darden v. Wainwright*, 477 U.S. 168, 181, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 642, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974)). "To constitute a denial of due process, the misconduct must be 'so pronounced and persistent that it permeates the entire atmosphere of the trial.'" *Byrd v. Collins*, 209 F.3d 486, 529 (6th Cir. 2000) (quoting *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997)).

■ Landers argues that the prosecution suppressed Angela Wallace's testimony from another proceeding, improperly vouched for the veracity of a witness's testimony, and misled the jury. The state court held that the record was devoid of evidence that the prosecutor had deliberately withheld evidence. *Landers*, 2004 WL 1089500, at \*2. In response, Landers points to the prosecutor's statement that he was in possession of the transcript in question prior to the start of his second trial. However, as the district court pointed out, the prosecutor immediately corrected his statement.

Q: And you had the transcript before the trial began; is that correct?

A: You know what, no, I don't think I did. In fact, your question causes me to recall that we acquired her testimony from the San Francisco trial after she had been released as a witness in the Detroit case. We—but while the second trial was still pending, we attempted to cause her to

return to Michigan to reappear during the second trial ... The reason we wanted her to return was because we acquired those transcripts after she testified in the second trial.

In addition to correcting his statement, the prosecutor shared the transcript with the defendants once it was received prior to the conclusion of trial, and attempted to recall Wallace to testify. Thus, reasonable jurists would not debate the district court's rejection of this claim because the state court determination was not contrary to clearly established federal law, nor was it premised upon an unreasonable determination of the facts in light of the evidence before it at the time.

To the extent that Landers claims that suppression of the transcript of Wallace's testimony violated his rights under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), he fails to identify any material evidence within the transcript to support the claim. *See LaMar v. Houk*, 798 F.3d 405, 415 (6th Cir. 2015) (citing *Brady*, 373 U.S. at 87, 83 S.Ct. 1194) ("A prosecutor violates *Brady* when he does not disclose evidence that is favorable to the accused and material to guilt or punishment."). Evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id.* at 416 (quoting *Kyles v. Whitley*, 514 U.S. 419, 433, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995)). A reasonable probability exists "when the government's evidentiary suppression undermines confidence in the outcome of the trial." *Id.* (quoting *Kyles*, 514 U.S. at 434, 115 S.Ct. 1555). Wallace, a California attorney at the time, testified at trial that she met Landers's co-defendant Jackson in 1999. After Wallace was excused and returned to California, the prosecution discovered that she had testified before a federal grand jury in

San Francisco, stating that she had met Jackson in February of 1998. The prosecution obtained a copy of this transcript, made arrangements for Wallace to return to testify, and shared the transcript with Landers prior to the conclusion of the second trial. But Wallace did not return to Michigan. With Wallace unavailable to testify, the prosecution requested to read, but not to enter as substantive evidence, a redacted portion of her statement for the sole purpose of impeaching her earlier in-court testimony. Because Landers does not point to any exculpatory evidence within the transcript, he fails to demonstrate that, had the transcript been disclosed to him prior to his second trial, the result of that trial would have been different. Thus, reasonable jurists would not debate the conclusion that the state court's decision was not contrary to, or an unreasonable application of clearly established federal law.

■ Next, Landers claims for the first time in his application for a COA that the prosecutor committed misconduct when he provided Johnson with a transcript of Johnson's earlier testimony to clear up any lies that he might have told before he testified at the second trial. In addition, Landers claims for the first time that the prosecution misled the jury. We generally will not hear issues raised for the first time on appeal absent extraordinary circumstances, which are not present here. *See United States v. Ellison*, 462 F.3d 557, 560 (6th Cir. 2006); *see also Cullen v. Pinholster*, 563 U.S. 170, 181–82, 131 S.Ct. 1388, 179 L.Ed.2d 557 (2011) (limiting habeas review to issues before the state court and adjudicated on the merits).

### III.  Confrontation Clause

■ Landers's claims three, five, seven, and eleven assert that he was deprived of his right under the Confrontation Clause to confront witnesses Ronney Johnson, Angela Wallace, and Kelvin Garland. The Confrontation Clause guarantees a defendant the opportunity to cross-examine the witnesses against him. *United States v. Owens*, 484 U.S. 554, 559, 108 S.Ct. 838, 98 L.Ed.2d 951 (1998). This right is not unlimited, and is subject to reasonable restrictions. *Id.* ("[T]he Confrontation Clause guarantees only an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish."). "This court's duty 'is not to determine whether the exclusion of the evidence by the trial judge was correct or incorrect under state law, but rather whether such exclusion rendered petitioner's trial so fundamentally unfair as to constitute a denial of federal constitutional rights.' " *Lewis v. Wilkinson*, 307 F.3d 413, 420 (6th Cir. 2002) (quoting *Logan v. Marshall*, 680 F.2d 1121, 1123 (6th Cir. 1982)).

Landers claims that the trial court should have permitted him to cross-examine Johnson more fully. Defense counsel sought to impeach Johnson's character as to truthfulness by eliciting testimony regarding topics such as Johnson's stated inability to access money despite wearing designer jewelry and accessories, involvement in fraudulent vehicle transactions, and involvement in various drug deals. Landers argues that the jury would have received a "significantly different impression" of Johnson's credibility with this testimony. *See Delaware v. Van Arsdall*, 475 U.S. 673, 680, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986). The Michigan Court of Appeals concluded that the jury had a full understanding of Johnson's credibility. It found that:

the trial court permitted inquiry into relevant matters affecting Johnson's credibility, allowing defense counsel to elicit testimony that Johnson repeatedly lied, sold drugs, and spent time in pris-

on, and that he earned enough money to support his family, purchase luxury items, and drive a BMW, even though he did not report any income.

*Landers,* 2004 WL 1089500, at *4.

The district court correctly pointed out that Johnson was subject to cross-examination for over a full day, during which time Johnson admitted to lying to the police, lying during the defendants' preliminary examination, and lying during the previous trial. Johnson admitted to being a felon and that he had served time in jail for a drug crime. In addition, the prosecution elicited testimony that Johnson had lied or omitted information in his four statements to the police and that he was the beneficiary of a deal in which criminal charges would be dropped in exchange for his testimony against Landers and Jackson. Reasonable jurists would not debate the district court's conclusion that "the jury had more than enough information to assess Johnson's credibility" such that Landers's right of confrontation was not violated.

■ Landers also argues that the trial court's decision to allow Kelvin Garland to testify as to statements made to him by the victims, Kevin Garland and Mary Ann Simmons, violated his Confrontation Clause rights. Landers fails to demonstrate that the state court's decision that the statements were non-testimonial, and therefore not protected by the Sixth Amendment, was contrary to clearly established federal law or based on an unreasonable determination of the facts based on the evidence before the court. *See Davis v. Washington,* 547 U.S. 813, 823–24, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006); *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004); *United States v. Franklin,* 415 F.3d 537, 545 (6th Cir. 2005). Reasonable jurists would not debate the district court's conclusion.

■ Landers next argues that the trial court violated his Confrontation Clause rights when it permitted the prosecution to read to the jury Wallace's testimonial statements. As described above, Wallace returned to California after testifying, whereupon the prosecution discovered evidence that tended to impeach her testimony. Although the prosecution made arrangements for Wallace to return to Michigan to testify again, she did not appear. With Wallace unavailable to testify, the prosecution requested to read, but not to enter as substantive evidence, a redacted portion of her statement for the sole purpose of impeaching her earlier in-court testimony. There is no dispute that Wallace was unavailable or that her prior statement was testimonial.

The Confrontation Clause does not "bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." *Crawford,* 541 U.S. at 59, n.9, 124 S.Ct. 1354. "The admission of a testimonial statement in and of itself is not enough to trigger a violation of the Confrontation Clause. Instead, the statement must be used as hearsay—in other words, it must be offered for the truth of the matter asserted." *United States v. Pugh,* 405 F.3d 390, 399 (6th Cir. 2005). We previously determined that Wallace's out-of-court statements did not violate the Confrontation Clause because the trial court, on multiple occasions, expressly limited the scope of the evidence to that of impeachment evidence and provided a clear limiting instruction to the jury, prohibiting it from considering the statement as substantive evidence. *Jackson v. Stovall,* 467 Fed.Appx. 440, 444 (6th Cir. 2012). And it is doubtful that Landers can satisfy the materiality prong of the *Brady* standard with respect to the remainder of the transcript. Reasonable jurists would

not debate the district court's rejection of this claim.

## IV. Ineffective Assistance of Counsel

Landers next argues that trial counsel was ineffective for failing to object to the reading of the transcript of Wallace's prior testimony, failing to object to the trial court's assistance of the prosecution in finding a rule under which the transcript could be admitted, and failing to object to the claimed Confrontation Clause violations. These instances of alleged ineffectiveness are raised in Landers's second claim. Landers's COA application does not include the instances of alleged ineffectiveness raised in claim nine, and they are therefore waived. *See* 28 U.S.C. § 2253(c)(3); *Jackson*, 45 Fed.Appx. at 385.

To establish ineffective assistance of counsel, Landers must show both deficient performance and prejudice under *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). A lawyer is deficient when his performance falls below an objective standard of reasonableness. *Id.* at 688, 104 S.Ct. 2052. A defendant is prejudiced by his lawyer's deficient performance when there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. 2052. The record reveals that trial counsel brought these issues to the attention of the trial court and discussed them at length. In any event, trial counsel is not required to make baseless objections. *See Krist v. Foltz*, 804 F.2d 944, 946–47 (6th Cir. 1986). Reasonable jurists would not debate the district court's rejection of this claim.

Accordingly, we **DENY** Landers's application for a COA.